IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DAVID DEPYPER and KATE MILASHUS, individually and on behalf of similarly situated persons,<br><br>Plaintiffs,<br><br>v.<br><br>ROUNDY'S SUPERMARKETS, INC. and ROUNDY'S ILLINOIS, LLC, doing business as MARIANO'S,<br><br>Defendants. | Case No. 20-cv-2317<br><br>Judge Mary M. Rowland |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs David DePyper and Kate Milashus bring a putative collective action against their former employer,[1] Roundy's Illinois, LCC (doing business as Mariano's) and its corporate owner, Roundy's Supermarkets, Inc., for allegedly violating the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and the Illinois Minimum Wage Law 820 ILCS 105/1, *et seq.* ("IMWL"). Before the Court is a motion for conditional certification and approval of the proposed notice to potential collective action members. (Dkt. 28). For the reasons set forth below, the motion granted.

**BACKGROUND**

Plaintiffs seek to conditionally certify, pursuant to 16(b) of the Fair Labor Standards Act, all Mariano's Meat Managers (a/k/a Manager of Meat or Manager of

---

[1] The parties disagree about whether Roundy's Supermarkets, Inc. (the corporate owner) qualifies as an employer. (Answer, ¶ 8, 10, 16). For purposes of this motion, the Court will refer to both defendants colloquially as "employers."

1

Meat and Seafood, and including "Bench" Meat Managers) ("MMs") and Mariano's Bakery Managers (a/k/a Manager of Bakery and including "Bench" Bakery Managers) ("BMs"), employed by Defendants Roundy's Supermarkets Inc. and Roundy's Illinois, LLC, d/b/a/ Mariano's ("Defendants") at any location, any time from April 14, 2017 to the present.

DePyper worked as a MM (and occasionally as a Travel Team Manager) at various Mariano's branches from January of 2014 through January of 2019. (Dkt. 1, ¶ 8). Milashus worked as a BM at two Mariano's branches from May of 2018 through March of 2019. (Complaint, Dkt. 1, ¶ 10).

Neither the Plaintiffs nor the Defendants dispute that it is and has been the Defendants' policy to classify salaried BMs and MMs as exempt from the overtime requirements of the FLSA, and that as such they are not paid at the overtime rate when they work more than 40 hours in one week. (Dkt. 1, ¶ 37; Dkt. 16, ¶ 30). DePyper and Milashus take issue with this classification, alleging that because neither they nor any similarly situated employees were involved in "hiring, firing, disciplining, directing the work of other employees, or exercising meaningful independent judgment and discretion" they should not be classified as exempt. (Dkt. 1, ¶ 35). The Plaintiffs further allege that the Defendants "did not perform a person-by-person analysis" of the actual duties of BMs or MMs before classifying them as exempt. (Dkt. 1, ¶ 38). And once classified as exempt, the Plaintiffs allege that Store Managers observed that BMs and MMs were "primarily performing manual labor and non-exempt duties" but did not change their exemption status. (Dkt. 1, ¶ 40). Finally,

2

Plaintiffs allege Defendants instituted policies that prevented Plaintiffs from accurately recording all the hours that they actually worked. (Dkt. 1, ¶ 43). The Defendants deny each of these allegations. (Dkt. 16, ¶¶ 32–36, 38, 40).

## LEGAL STANDARD

Section 216(b) of the FLSA "gives employees the right to bring their FLSA claims through a 'collective action on behalf of themselves and other 'similarly situated' employees." *Alvarez v. City of Chi.*, 605 F.3d 445, 448 (7th Cir. 2010) (citing 29 U.S.C. § 216(b)). Because FLSA lawsuits cannot proceed as class actions, "they are opt-in representative actions." *Schaefer v. Walker Bros. Enterprises, Inc.*, 829 F.3d 551, 553 (7th Cir. 2016).

Because the FLSA does not lay out collective action procedures, district courts have "wide discretion" to determine how these suits should proceed. *Weil v. Metal Technologies, Inc.*, 925 F.3d 352, 357 (7th Cir. 2019) (citing *Alvarez*, 605 F.3d at 449). Courts in this district generally employ a two-step process. At step one, the conditional certification stage, a plaintiff "must show that there are similarly situated employees who are potential claimants." *See Russell v. Ill. Bell. Tel. Co.*, 575 F. Supp. 2d. 930, 933 (N.D. Ill. 2008). "The conditional approval process is a mechanism used by district courts to establish whether potential plaintiffs in the FLSA collective action should be sent a notice of their eligibility to participate and given the opportunity to opt in to the collective action." *Ervin v. OS Rest. Servs., Inc.*, 632 F.3d 971, 974 (7th Cir. 2011). The plaintiffs' burden is to make a "modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a

common policy or plan that violated the law." *Russell*, 575 F. Supp. 2d. at 933. To decide whether plaintiffs meet this burden, courts employ a "lenient interpretation" of the term "similarly situated". *Ivery v. RMH Franchise Corp.,* 280 F. Supp. 3d 1121, 1133 (N.D. Ill. 2017).

To meet the modest factual showing standard, plaintiffs must provide "some evidence in the form of affidavits, declarations, deposition testimony, or other documents to support the allegations that other similarly situated employees were subjected to a common policy that violated the law." *Pieksma v. Bridgeview Bank Mortg. Co., LLC*, 2016 U.S. Dist. LEXIS 177177, at *1 (N.D. Ill. Dec. 22, 2016) (internal quotations omitted). However, conditional certification is not automatic and to proceed as a collective action, plaintiffs must "demonstrate similarity among the situations of each plaintiff beyond simply claiming that the FLSA has been violated; an identifiable factual nexus that binds the plaintiffs together as victims of a particular violation of the overtime laws generally must be present." *Briggs v. PNC Fin. Servs. Grp., Inc.*, 2016 U.S. Dist. LEXIS 33703, at *2 (N.D. Ill. Mar. 16, 2016) (citations omitted). If these plaintiffs can show that others are similarly situated, the court may "conditionally certify the case as a collective action and allow notice of the case to be sent to similarly situated employees who may then opt in." *Grosscup v. KPW Mgmt., Inc.*, 261 F. Supp. 3d 867, 870 (N.D. Ill. 2017).

Importantly, the merits are not decided at this stage. The court "does not make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a Defendant." *Bergman v. Kindred Healthcare, Inc.,*

949 F. Supp. 2d 852, 855–56 (citation omitted). The second step of the two-step process is more stringent. "[F]ollowing the completion of the opt-in process and further discovery, the Defendant may ask the Court to reevaluate the conditional certification to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis." *Russell*, 575 F. Supp. 2d at 933 (internal quotations and citations omitted).

## ANALYSIS

Defendants make two arguments: (1) that conditional certification is improper because the named Plaintiffs and the employees they seek to represent are not "similarly situated," and (2) that the proposed notice procedure is improper.

### A. Similarly Situated Plaintiffs

Defendants first argue that because the actual duties performed by the named Plaintiffs differ substantially from the duties attributed to BMs and MMs in corporate documents such as job descriptions, the named Plaintiffs and the managers they seek to represent are not "similarly situated." (Dkt. 31 at 3). This argument relies on the assumption that those other managers actually *are* performing the duties detailed in corporate job descriptions (*i.e.* that there was a "disparity between Plaintiffs' actual job duties and the actual job duties of other individuals that were meat and bakery managers"). (*Id.* at 4). Because this assumption is contradicted by the record, and because the Defendants do not contest the validity of that record (except to call the Plaintiffs' declarations "self-serving," Dkt. 31 at 3) this argument is not persuasive.

5

In his signed declaration, DePyper describes his duties as non-managerial, saying that they included "cutting meat, waiting on customers, preparing, cooking, and wrapping meat department orders, throwing [or unloading] both fresh and frozen meat deliveries, making sure the shelves were filled, and cleaning." (DePyper Declaration, Dkt. 28, ¶¶ 9–10). While he was a MM, DePyper states that he was "scheduled to work 50 hours every week" (*Id.*, ¶ 7) and that he was a salaried employee classified as exempt from the overtime requirements of the FLSA. (*Id.*, ¶ 6).

DePyper also states that he has worked as a MM at five different Mariano's stores, including the Ukranian Village, Westchester, Wheaton, Bloomingdale, and Frankfort branches, that he was in "frequent contact" with the MMs at other branches, and that while he was a Travel Team Manager he worked with the MMs at many more Mariano's stores. (*Id.*, ¶¶ 3–5). DePyper goes on to say that his duties as a MM "remained the same [. . .] at all of the different Mariano's locations where [he] worked." (*Id.*, ¶¶ 9–11). Moreover, based on conversations he had with other MMs at various Mariano's, he believes that MMs "company-wide" are all classified as "salary-paid overtime exempt" and are "regularly scheduled to and required to work overtime hours" at their normal rate of pay despite having non-managerial "duties and responsibilities [that] are all substantially similar" to his own. (*Id.*, ¶ 12).

Milashus states in her signed declaration that she was required to work a minimum of 50 hours each week (Milashus Declaration, Dkt. 28, ¶ 7), that she primarily performed manual labor and other non-exempt work such as "baking, waiting on customers, preparing bakery department orders, stocking shelves and

6

displays, and cleaning" (*Id.*, ¶ 9), and that these duties involved "very little management responsibility." (*Id.*, ¶ 10). Nevertheless, she states that she was classified as a salaried employee exempt from the requirements of the FLSA. (*Id.*, ¶ 6).

Milashus also states in her declaration that she worked as a BM at the Mariano's locations in Elmhurst and Westchester. (*Id.*, ¶¶ 3–4). In her capacity as a BM, Milashus says that she "was in frequent contact with the BMs at other local Mariano's supermarkets." (Dkt. 28, ¶ 5). Based on conversations with these other BMs, and based on her experiences at two different Mariano's locations (where BM duties "were the same") she believes that all BMs share the same "duties and responsibilities," that they are all classified as "salary-paid overtime exempt," and that they are all scheduled to work overtime at their normal rate of pay. (*Id.*, ¶ 12).

As the named Plaintiffs argue in their briefs, these declarations could support the theory that, assuming the named Plaintiffs were misclassified as exempt, *other* Mariano's MMs and BMs may also be misclassified, because they are *also* performing duties that are unlike the managerial duties described in their job descriptions. At this early stage, that is sufficient evidence that plaintiffs in the putative collection "together were victims of a common policy or plan that violated the law." *Slaughter v. Caidan Mgmt. Co.*, 317 F. Supp. 3d 981, 990 (N.D. Ill. 2018). At the conditional certification stage such a theory need only be supported by evidence such as "affidavits, declarations, [and] deposition testimony," which Milashus and DePyper have provided. *Pieksma v. Bridgeview Bank Mortg. Co., LLC*, 2016 U.S. Dist. LEXIS

177177, at *1 (N.D. Ill. Dec. 22, 2016) (internal quotations omitted). The Plaintiffs have therefore made the required "modest factual showing" that there is a class of similarly situated plaintiffs working as BMs and MMs across multiple Mariano's stores based on conversations between the named Plaintiffs and other Managers. In light of the Plaintiffs' declarations, the corporate job descriptions that purport to summarize their duties are not dispositive. Defendants will have an opportunity to prove that some or all other BMs and MMs in fact did perform managerial duties similar to those in their job descriptions, but that question is not properly before the Court at this time. At step two, "[d]iscovery will permit the parties to show which putative class members, if any, are exempt, and which are not." *Boltinghouse v. Abbott Labs., Inc.*, 196 F. Supp. 3d 838, 842 (N.D. Ill. 2016). For now, the Court is "tasked only with determining whether it can 'envision a scenario' where Plaintiffs and potential collective action members are similarly situated." *Slaughter v. Caidan Mgmt. Co.*, LLC, 317 F. Supp. 3d 981, 989 (N.D. Ill. 2018).

### B. Notice and Production of Information

Plaintiffs have provided a proposed notice. Plaintiffs propose sending the notice to potential collective members both by first class mail and by email. Email notice would be delivered via a hyperlink to a PDF rather than as a PDF attachment, and would utilize the third-party administrator's online portal to collect electronically signed consent forms from collective members. If a potential collective member cannot be reached by either first class mail or email (*i.e.* both notices are returned as undeliverable) then the Plaintiffs would send a notice via text message. Only as a last

resort would Plaintiffs use social security numbers to seek alternative ways of communicating with potential collective members.

Half-way through the opt-in period, Plaintiffs propose sending a reminder in the mail and via email to prospective collective action members who have not yet responded.

Plaintiffs request that the Defendants "produce [. . .] within seven days a computer-readable data file containing the names, last known mailing addresses, last known telephone numbers, last known personal and work email addresses, dates of employment and work locations for all collective members, and the social security numbers for those members whose notices are returned undeliverable." (Dkt. 28 at 13–14).

The Defendants do not object to the form of the notice, the production of names, mailing addresses, dates of employment, work locations, social security numbers, or the collection of electronic signatures through an online portal. Defendants have raised that following objections:

**1. Email Addresses**

Defendants argue that the Court should not require the production of email addresses. Defendants ignore recent cases that allow for email service, including some cases in which Roundy's and Mariano's were the defendants. *See, for example, Kujat v. Roundy's Supermarkets, Inc., et al.*, No. 18 CV 5326, 2019 WL 1953107 (N.D. Ill. May 2, 2019) (providing plaintiffs with telephone numbers, email addresses, and social security numbers if other methods fail); *Bigger v. Facebook*, 375 F. Supp. 3d

9

1007, 1025 (ordering the production of email address, telephone number, and Social Security Numbers as well as other information) (partially reversed and remanded on other grounds); *Ruffolo v. LaSalle Grp., Inc.*, No. 18 CV 3305, 2019 WL 978659 (N.D. Ill. Feb. 28, 2019 (ordering the production of both email address and telephone numbers). Because virtual communication has become ubiquitous, Plaintiffs are granted leave to serve notice via email. Plaintiffs' request for personal email addresses is also granted.

In the alternative, the Defendants argue that if Plaintiffs are allowed to send emails to putative class members, that those emails should only go to personal email accounts, not to corporate email accounts. The Defendants do not cite any cases or advance any arguments in support of their position. It is the Plaintiffs' position that personal email addresses may be outdated (particularly if they haven't been updated since an employee or former employee first applied for their job). They argue that because current Mariano's employees have corporate email addresses, these should also be provided. Because these corporate email addresses are more likely to be valid and current, this is a reasonable request and will be granted.

### 2. Phone Numbers for Text Messages

Defendants object to producing the telephone numbers of putative collective action members and allowing notice by text message, arguing that written notice via first class mail (and email) is sufficient. Plaintiffs ask leave to send a single text message to potential collective members who cannot be reached by either first class mail or email. Defendants rely on *Muir v. Guardian Heating & Cooling Servs.*, No.

10

16 CV 9765, WL 959028 (N.D. Ill. Mar. 13, 2017). But in *Muir,* plaintiffs wanted to use text messages to contact every possible collective action member. The *Muir* court found that this would be duplicative since those people were also getting emails. *Id.* at 10. In this case, Plaintiffs will send a text message only when email and first-class mail notices have failed. *See Haugen v. Roundy's Illinois, LLC d/b/a Mariano's*, No. 18 CV 7297 (citation not yet available, order at Dkt. 54) (approving this process of text notification when emails and first-class mailings are undeliverable).

Because text messages are far less obtrusive than telephone calls and because only otherwise-unreachable people would receive text messages, this part of the Plaintiffs' proposed notice procedure is approved by the Court.

**3. Reminder Notices**

Next, the Defendants argue that a reminder notice should not be allowed, both because it would be unnecessarily intrusive, and because it might be interpreted as a message from the Court itself encouraging potential plaintiffs to join the lawsuit.[2] Defendants cite *Hudgins v. Total Quality Logistics, LLC*, No. 16 CV 7331, 2016 WL 7426135, at *18 (N.D. Ill. 2016) (absent evidence that email and first class mail are ineffective, reminders would be "unnecessary and overly intrusive" and" could be interpreted as encouragement by the Court to join the lawsuit"); *Slaughter v. Caidan Mgmt. Co.*, LLC, 317 F. Supp. 3d 981, 992 (N.D. Ill. 2018) (same). The Court is

---

[2] Plaintiffs cite several cases that come to the opposite conclusion, including, among others, *Kujat v. Roundy's Supermarkets, Inc., et al.*, No. 18 CV 5326, 2019 WL 1953107 (N.D. Ill. May 2, 2019); *Haugen v. Roundy's Illinois, LLC d/b/a Mariano's*, No. 18 CV 7297 (citation not yet available, order at Dkt. 51); *Pfefferkorn v. Primesource Health Grp., LLC*, No. 17 CV 1223, 2019 WL 354968 (N.D. Ill. Jan. 29, 2019). These requests were all unopposed and are therefore unpersuasive.

11

persuaded by the reasoning of these cases. Plaintiffs' proposal to send a reminder notice is denied.

### 4. Use of PDF Attachments

The Defendants also argue that if notice is sent by email, then the notice should be sent as a PDF attachment rather than in the body of an email. The Defendants cite several cases in which the Court has required notification to come in the form of a PDF, pointing to the potential for text in the body of an email to be altered and forwarded to unintended recipients.[3]

Plaintiffs have filed a signed declaration by Tarus Dancy, a representative of their third-party notice administrator. (Dancy Declaration, Dkt. 28). Mr. Dancy states that a notice in the body of an email is preferable to a notice in an attachment. First, he says that there is a "high risk of the sender being flagged as a spammer when mass emails are sent with attachments." (*Id.* at 1). According to Mr. Dancy, this could have various negative consequences, including intended recipients not receiving notice emails, and the third-party notice administrator being accused of violating the CAN-SPAM Act. In order to prevent fraudulent forwarding of the kind contemplated by the Defendants, Mr. Dancy describes how each proposed notice email would contain a unique hyperlink which could only be accessed by the original

---

[3] The defendants cite three cases in support of this argument, including cases decided by this Court: *Colon v. EYM Pizza of Ill., LLC*, 2019 U.S. Dist. LEXIS 178056, *12 (N.D. Ill. 2019) (Rowland, J.); *Lieberman v. Altounion Constr., Inc.*, 2019 U.S. Dist. LEXIS 207440, *8 (N.D. Ill. 2019)(Rowland, J.); *Muir v. Guardian Heating & Cooling Servs.*, 2017 U.S. Dist. LEXIS 35232, at *29 (N.D. Ill. 2017) ("[m]indful of 'the [undesirable] potential for recipients to modify and redistribute email messages,' the Court requires that the notice be emailed as a .pdf attachment rather than included in the body of the email message"). However, the Court is persuaded by the information contained in Mr. Dancy's declaration to revise its previous thinking on the matter.

recipient, not by subsequent recipients to whom such an email might be forwarded. This hyperlink would bring the recipient to an unalterable PDF of the notice.

Because this solution adequately addresses the danger of fraudulent alteration of the notice, and because it avoids the problems associated with notices being flagged as spam, the Plaintiffs' proposal will be adopted.

### 5. Production Deadline

Relying on challenges caused by the pandemic, Defendants request 30 days to respond with the requested information. The Court finds this a reasonable request.

## CONCLUSION

For the stated reasons, Plaintiffs' motion for step-one notice of their Fair Labor Standards Act collective action is granted as follows:

(1) Parties shall submit to the Court's proposed order box (Proposed_Order_Rowland@ilnd.uscourts.gov), a proposed agreed confidentiality order on or before November 16, 2020.

(2) Defendants shall produce the names, dates of employment, locations of employment, last known addresses, personal email addresses, corporate email addresses, and cellular telephone numbers of the following "Collective Members": Defendants' current and former Bakery Managers and Meat & Fish Managers who were employed during any week from April 14, 2017 through the present at any of Defendants' locations. ("Employee Information").

(3) Defendants shall provide the Employee Information in an electronic form that can be used by the Plaintiffs in delivering the Court-approved Notice. If the information is not stored electronically, Defendants shall provide it in written form. This information must be produced to Plaintiffs within 30 days of the entry of this Order.

(4) The Court authorizes that the Notice and Consent Form submitted as Exhibit 8 to Plaintiffs' motion (Dkt. 28) may be sent to those individuals whose names are being provided as required by this Order along with a self-addressed, postage paid return envelope for U.S. Postal Mailing. The Notice and Consent forms shall be mailed by first class mail and may also be sent electronically in the manner described

above. The Court authorizes Notices to be sent via text message if and only if both email Notices and mailed Notices are returned undeliverable.

(5) Opt-in collective members are given 60 days after the date the Notice and Consent forms are mailed to file a Consent to Join form opting-in to this litigation

(6) A Consent to Join that is postmarked on the deadline is considered timely. Consents received by mail without postmarks are considered timely if received within five business days of the deadline. Plaintiffs shall provide the Court with a notice indicating the date on which the Notice forms were initially mailed.

(7) Within 10 days after the close of the Opt-In Period, Plaintiffs' counsel will file the consent forms for the Opt-In Plaintiffs.

(8) Within 30 days after the close of the opt-in period, the Parties shall confer pursuant to Rule 16(b) and prepare an Initial Status Report as provided for on the Court's website.

E N T E R:

Dated: November 9, 2020

MARY M. ROWLAND
United States District Judge

14